v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–1202.**

Court of Appeals of Arkansas.

May 9, 2012.

Thomas B. Devine III, Little Rock, Appellant.

Dustin McDaniel, Atty. Gen., Leaann J. Irvin, Asst. Atty. Gen., Little Rock, Appellee.

JOHN B. ROBBINS, Judge.

Appellant, D.D.R., was charged in the criminal division of circuit court with four counts of aggravated robbery, four counts of theft of property, one count of theft by receiving, and one count of aggravated assault. The crimes were allegedly committed on October 14, 2010, and January 16, 2011, when D.D.R. was fifteen years old. The State sought increased penalties against D.D.R. because the offenses were committed while employing a firearm and while acting in concert with two or more persons. D.D.R. filed a motion to transfer all of the charges to the juvenile division of circuit court, and after a hearing the trial court denied the motion. D.D.R.'s sole point in this interlocutory appeal is that the trial court's denial of his motion to transfer the case to juvenile court was clearly erroneous. We affirm.

The prosecutor charged D.D.R. in the criminal division of circuit court pursuant to Ark.Code Ann. § 9–27–318(c) (Repl. 2009). Upon the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court. Ark.Code Ann. § 9–27–318(e).

The trial court is required to consider all of the following factors at the transfer hearing:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark.Code Ann. § 9–27–318(g). The trial court must make written findings on all ten enumerated factors in deciding whether to transfer the case, Ark.Code Ann. § 9–27–318(h)(1),₃ but proof need not be introduced against the juvenile on each factor, and the trial court is not required to give equal weight to each of the statutory factors in arriving at its decision. *Magana–Galdamez v. State*, 104 Ark.App. 280, 291 S.W.3d 203 (2009).

■ Upon a finding by clear and convincing evidence that the case should be transferred to another division of circuit court, the judge shall enter an order to that effect. Ark.Code Ann. § 9–27–318(h)(2). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Magana–Galdamez, supra.* We will not reverse the trial court's decision in this regard unless it was clearly erroneous. *R.M.W. v. State*, 375 Ark. 1, 289 S.W.3d 46 (2008). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

Scott Tanner testified for the defense at the transfer hearing. Mr. Tanner coordinates the juvenile-ombudsmen division for the Public Defender Commission. Mr. Tanner gave testimony about the provisions of extended juvenile jurisdiction (EJJ), which is codified at Ark.Code Ann. §§ 9–27–501 to –510 (Repl.2009).

Mr. Tanner stated that an extended juvenile-jurisdiction designation gives juveniles charged with serious offenses rehabilitative options available to the juvenile division of circuit court. Mr. Tanner testified that under the provisions of EJJ, the juvenile division retains jurisdiction until age twenty-one, and that numerous options are available including probation or a commitment to the Division of Youth Services (DYS). When a juvenile is committed to DYS, he is placed in a structured environment with educational, vocational, and counseling programs geared toward the juvenile's rehabilitation. The juveniles under the EJJ system are reminded on a daily basis that if they fail to comply with the requirements imposed by the trial court there will be adverse

consequences, including the possibility of the imposition of an adult prison sentence.

Three of D.D.R.'s schoolteachers, Kaylie Felty, Brian Tony, and Mindy Williams, all testified on his behalf. These witnesses described D.D.R. as a good, respectful kid who did well in school, but who was impressionable and hung around the wrong crowd. D.D.R. also had a troubled home life with scant evidence of any guidance from his parents. Each of these teachers indicated that they had supported D.D.R. and tried to be positive influences. Ms. Felty testified that she thought that D.D.R. could do well if given the proper guidance, and she recommended that the case be transferred to juvenile court to "open his eyes and help him change his life." Mr. Tony agreed that D.D.R. should not be tried in adult court, stating that D.D.R. could still be saved and that if sentenced to prison "he definitely would not make it." Ms. Williams testified that there is hope for D.D.R. and that he could be saved if placed in a positive environment with the right people.

D.D.R.'s paternal grandmother, Erma Ruth Richards, testified that D.D.R. lived with her and her husband about a year and a half ago. She stated that he moved in with them after having behavioral problems in the custody of his mother. Mrs. Richards testified that she never had any problems with D.D.R. when he lived with her and that he abided by their rules. Mrs. Richards stated that if D.D.R. were placed in her custody she would monitor him and set rules he would have to follow. She stated that he would be required to attend school and church regularly. Mrs. Richards said that D.D.R. is too young to be with hardened criminals and she thought his case should be in juvenile court with her having custody.

Cheotia Polk, a juvenile-probation officer, testified for the State. Mr. Polk stated that D.D.R. first became involved in the juvenile system as a result of a criminal incident in March 2008, when he was thirteen years old. On that occasion, D.D.R. committed breaking or entering and theft of property. On subsequent occasions D.D.R. committed residential burglary and minor in possession of a handgun. D.D.R. was placed on juvenile probation and, according to Mr. Polk, did not successfully comply with the terms of his probation. There were multiple pickup orders and detentions for infractions that included skipping or leaving school, and fighting with his mother or grandmother. D.D.R. also tested positive for THC three times and was suspended from school for bringing marijuana on campus.

Mr. Polk acknowledged that D.D.R. is a good student and respectful of authority when confronted face to face. D.D.R. also successfully completed C-step, which is a juvenile boot-camp program. However, Mr. Polk stated that D.D.R. "can turn it off and on" and that "D.D.R. was going to do what D.D.R. wanted to do" no matter how much he was warned of the consequences. Mr. Polk testified that D.D.R. was oppositional to his grandmother's rules as well as the court's rules. Mr. Polk stated that despite being offered extensive services, there is nothing left for D.D.R. in juvenile court. Mr. Polk gave the opinion that D.D.R. is not going to follow any juvenile-court rules no matter what D.D.R. tells Mr. Polk to his face.

Officer Robert Martin of the Little Rock Police Department testified about the aggravated robberies and other crimes D.D.R. is alleged to have committed. Officer Martin testified that he investigated the October 2010 incident where four Hispanic victims were robbed at gunpoint by several black males. According to witnesses, all of the culprits were armed and large amounts of cash were taken from the

victims. One of the victims reported that he was pushed to the ground and had a gun held to his head, and as the suspects were running away shots were fired back toward the victims. A nearby store owner saw the suspects running toward their get-away vehicle and he grabbed one of them, identified as D.D.R., and a gun fell to the ground. The store owner let D.D.R. go when another suspect picked up the gun and pointed it at him. Sometime later, one of the robbery victims selected D.D.R. from a photo lineup.

Officer Martin testified that the January 2011 robbery occurred when a Hispanic man was cleaning out his car and two black males robbed him, putting a gun to his head and taking his wallet, credit card, and cell phone. A witness to the robbery selected D.D.R. as one of the culprits from a photo lineup, but she said she could not be sure he was one of the robbers. Later that day, four black males attempted to buy some jewelry in Park Plaza Mall using the stolen credit card. When the credit card was denied, the suspects grabbed some gold watches and bracelets and fled. The mall-store employee selected D.D.R. from a photo spread, and she said that D.D.R. was the person who handed her the stolen credit card and ₇took some of the jewelry. Just minutes later, the police stopped a vehicle containing the four suspects, and D.D.R. was in the rear of the vehicle in possession of some of the stolen jewelry. The police found a semi-automatic handgun under the seat cushion where D.D.R. was sitting.

In this appeal, D.D.R. argues that the trial court's denial of his motion to transfer to juvenile court was clearly erroneous. D.D.R. contends that he is a suitable candidate for rehabilitation in the juvenile system under the provisions of extended juvenile jurisdiction. He notes that aggravated robbery is one of the charges for which a juvenile case may be designated EJJ. *See* Ark.Code Ann. § 9–27–501(a)(3) (Repl.2009).

D.D.R. relies on the testimony of three of his teachers, who all agreed that he is a good, respectful kid and has academic potential if placed in the proper environment. D.D.R. maintains that a commitment to the Department of Youth Services, which offers structure, education, and counseling, would provide him a rehabilitative environment. D.D.R. asserts that his completion of the C-step program suggests a high potential for success in DYS. D.D.R. notes that, under the provisions of EJJ, the juvenile court would be able to monitor him for several years until he turns twenty-one, and that should he fail to comply with the court's orders he would still be subject to an adult criminal sentence. For these reasons, D.D.R. argues that it was error to keep this case in the criminal division of circuit court and that this case should be reversed and remanded for transfer to the juvenile division.

₈We hold that the trial court committed no error in denying D.D.R.'s motion to transfer. As required by law, the trial court considered each of the statutory factors, and made the following written findings:

(1) The seriousness of the alleged offense and the protection of society justifies prosecution in the criminal division of circuit court;

(2) The alleged offense was committed in an aggressive, violent, premeditated or willful manner;

(3) The offense was committed against persons and property;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense was great;

(5) The previous history of the juvenile justifies prosecution in the criminal division of circuit court;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated like an adult justifies prosecution in the criminal division of circuit court;

(7) Facilities or programs available to the judge of the juvenile division of circuit court are available but not likely to rehabilitate;

(8) The juvenile was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history justifies prosecution in the criminal division of circuit court;

(10) Additional relevant factors: There is nothing we can do that hasn't been done already. Defendant has had the benefit of a strong support system and continues to engage in criminal behavior despite that and the effort of the juvenile court system.

 The evidence in this case demonstrated that D.D.R. had been offered the services of the juvenile system as a result of his commission of previous offenses, but rather than comply with the juvenile court's rules he persisted in delinquent behavior. The present allegations involve serious, violent, and premeditated conduct that raises legitimate concerns relating to the protection of society. As the moving party, D.D.R. had the burden of proving by clear and convincing evidence that the case should be transferred to the juvenile division of circuit |₉court. Taking the evidence as a whole, the trial court retained jurisdiction, making written findings on the requisite enumerated factors as to why juvenile jurisdiction was inappropriate. On this record, we are not left with a definite and firm conviction that a mistake was committed in denying appellant's transfer motion. Pursuant to our holding that the trial court's decision was not clearly erroneous, we affirm.

Affirmed.

MARTIN and HOOFMAN, JJ., agree.