SLIP OPINION


# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-14-944

| | |
|---|---|
| V.S.<br>**APPELLANT**<br><br>V.<br><br>STATE OF ARKANSAS<br>**APPELLEE** | Opinion Delivered   September 2, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NOS. CR-14-700; CR-14-1414; CR-14-1415]<br><br>HONORABLE LEON JOHNSON, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND DISMISSED IN PART |

### BRANDON J. HARRISON, Judge

V.S. appeals the denial of his motion to transfer to the juvenile division of the circuit court. We affirm in part and reverse and dismiss in part.

In March 2014, fifteen-year-old V.S. was charged with kidnapping, aggravated robbery, theft of property, and aggravated assault in CR-14-700. In May 2014, he was charged with aggravated robbery and theft of property in CR-14-1414 and aggravated robbery in CR-14-1415. There is no motion to transfer to the juvenile division of the circuit court in the record, but on 24 June 2014, the circuit court held a hearing on whether the cases should be transferred.

Joseph Green, a detective with the North Little Rock Police Department, testified that he investigated several robberies in the Levy neighborhood in North Little Rock. He

described three different robberies: in the first, a thirteen-year-old boy was approached by three suspects, one of whom displayed a handgun, and robbed of his shoes and his cell phone; in the second, only a few blocks from the first, an older gentleman was walking home from the grocery store and was approached by three suspects, one of whom displayed a handgun and demanded "everything he had"; in the third, which was also a kidnapping, the eighteen-year-old victim was approached by three suspects and, at gunpoint, was forced to get into the back seat of his own car and was driven around Little Rock and North Little Rock so he could retrieve money from ATMs. This victim was also released from the vehicle at one point and told to run, at which time the suspects shot at him. V.S. was identified by the victims as a suspect in all three robberies and identified as the suspect that displayed the handgun in the first robbery. Green also testified that V.S.'s mother provided a backpack to police that contained a .32-caliber revolver matching the description of the handgun.

Sabrina Hayes, V.S.'s juvenile-probation officer, testified that she had been V.S.'s probation officer since October 2010. At that time, he was charged with criminal mischief and put on probation. Over the next several years, Hayes testified, V.S. was placed in acute care at Rivendell and Pinnacle Pointe, residential care at Youth Home, attended Rivendell's day school, and received counseling through United Family Services. During that time, he also committed other offenses, including first-degree terroristic threatening, third-degree assault, first-degree criminal mischief, and domestic battery. Hayes stated that, when she first began working with V.S., he had behavior problems but was respectful, but as the years went by, he became very aggresssive. Hayes testified that

V.S. had very supportive parents who worked well together. On cross-examination, Hayes explained that V.S. had been diagnosed with, among other things, a mood disorder, oppositional defiance disorder, and explosive disorder and that he had never been committed to the Division of Youth Services (DYS).

Scott Tanner, an employee of the Public Defender Commission, described the resources and facilities available at DYS, noting that any youth that is committed to DYS undergoes an educational and psychological evaluation and is given a case plan to provide rehabilitation. He stated that primary goals are completion of a high school diploma or GED and providing mental health services. Most importantly, DYS can provide long-term structure and consistency, and through extended juvenile jurisdiction (EJJ), greater scrutiny before a youth is released from DYS. Tanner opined that society was better served by placing defendants like V.S. in a facility "versed in dealing with youthful issues, working with younger offenders, and helping equip them with some basic skills."

Jamar Shabazz, V.S.'s father, testified that V.S. was a "great young guy" but that he "makes decisions which [are] no good." He expressed concern that V.S. would be unable to get a job if he was convicted of a felony and sent to prison and his preference for V.S. to be committed to DYS, which is a "last resort they never gave to him." Tonya Nelson, V.S.'s mother, also said that DYS would be the best thing for V.S.

In its oral ruling, the circuit court noted that V.S. had committed a serious offense (specifically the aggravated robbery) in an aggressive manner and that the offense was against a person. It also noted testimony that V.S. had participated in all three robberies. The court stated that V.S. had been in the juvenile system since 2010 and that, during that

time, he had not taken advantage of the structure provided to him. The court also noted V.S.'s previous adjudications and concluded that V.S. made the choice to participate in these robberies and that "he's had since 2010 . . . to try to work on these choices." The court denied the motion to transfer and entered a written order in each criminal case in July 2014. V.S. has appealed.

A circuit court's decision to retain jurisdiction of criminal charges against a juvenile must be supported by clear and convincing evidence. Ark. Code Ann. § 9–27–318(h)(2) (Repl. 2009). Clear and convincing evidence is proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *McClure v. State*, 328 Ark. 35, 942 S.W.2d 243 (1997). On review, the circuit court's denial of a transfer is not reversed unless the decision is clearly erroneous. *Beulah v. State*, 344 Ark. 528, 42 S.W.3d 461 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Johnson v. State*, 356 Ark. 534, 157 S.W.3d 151 (2004).

In deciding the motion to transfer, the circuit court must consider the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g). The circuit court is required to make written findings on all of the above factors. Ark. Code Ann. § 9-27-318(h)(1). But there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *D.D.R. v. State*, 2012 Ark. App. 329, 420 S.W.3d 494.

V.S. points out a number of facts that he feels are important: he was "relatively young" when the offenses were committed and the youngest of his codefendants; there are facilities and programs in place that the juvenile court could use for rehabilitative purposes; and with EJJ, he could be rehabilitated through DYS up to his twenty-first birthday and still face an adult sentence of up to forty years' imprisonment. He also argues that the circuit court's finding that he had "failed to show by clear and convincing evidence that there are facilities or programs available to the Judge of the Juvenile Division

of Circuit Court which would justify prosecution in the Juvenile Division of Circuit Court" is contrary to the testimony presented at the hearing. Finally, he asserts that the circuit court's opinion suggests that, had he acted alone, a juvenile transfer would be appropriate, which is "counter to the concept of more or less culpable."

The State argues that the number of previous charges against V.S., as well as the seriousness of the present charges, outweighs any suggestion that he was young and somehow less culpable. The State contends that V.S. "has had many chances for rehabilitation in several different structured environments over a period of three-plus years, and he has failed to take advantage of any of these opportunities for rehabilitation." Thus, the State argues, the circuit court did not clearly err in denying the transfer to juvenile court.

The circuit court's ruling was primarily based on its conclusion that V.S. had failed to take advantage of rehabilitative opportunities in the past and would be unlikely to do so if placed in DYS custody. This conclusion is supported by testimony that V.S. was already a juvenile offender on probation, had been placed in numerous rehabilitative facilities, yet still committed additional crimes. This explains the court's finding that V.S. "failed to show by clear and convincing evidence that there are facilities or programs available to the Judge of the Juvenile Division of Circuit Court which would justify prosecution in the Juvenile Division of Circuit Court." The facilities and programs are available, but V.S. did not demonstrate an ability or willingness to take advantage of them such that prosecution as a juvenile would be appropriate. Also, contrary to V.S.'s assertion, the court did not imply that had he acted alone, a transfer to the juvenile division would be

appropriate. Instead, in its consideration of factor (8), which is whether the juvenile acted alone or was part of a group in the commission of the alleged offense, the court found no clear and convincing evidence that justified prosecution in the juvenile division. While this finding may have been inartfully phrased, V.S. has not persuaded us that the court committed reversible error.

Consequently, we affirm the denial of the motion to transfer as to the kidnapping and aggravated-robbery charges. But we must dismiss the charges for theft of property and aggravated assault. Under Ark. Code Ann. § 9-27-318(c), a fifteen-year-old can be charged in circuit court for certain offenses, including kidnapping and aggravated robbery, but not theft of property or aggravated assault. Because the circuit court never had jurisdiction of these two charges, they are hereby dismissed without prejudice. *See Butler v. State*, 324 Ark. 476, 922 S.W.2d 685 (1996); *see also J.A.C. v. State*, 2013 Ark. App. 496; *K.O.P. v. State*, 2013 Ark. App. 667.

Affirmed in part; reversed and dismissed in part.

KINARD and GLOVER, JJ., agree.

*William R. Simpson, Jr.*, Pub. Defender, and *Llewellyn Marczuk*, Deputy Pub. Defender, by: *Margaret Egan*, Deputy Pub. Defender, for appellee.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.