

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–15–985

| | |
|---|---|
| | Opinion Delivered  September 28, 2016 |
| MALIK GILLIAM<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION |
| V. | [NO. CR–2015–1135] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

Malik Gilliam appeals the denial of his motion to transfer his case to the juvenile division of the circuit court. He argues that evidence of his prior history should have been excluded pursuant to Ark. Code Ann. § 9-27-309(k) (Repl. 2015). We disagree and affirm.

In April 2015, Gilliam was charged in the Pulaski County Circuit Court with sexual assault in the second degree. Gilliam, who was seventeen at the time of the incident, was accused of sexually assaulting his nine-year-old cousin, A.M. In May 2015, Gilliam moved to transfer his case to the juvenile division of the circuit court. In July 2015, the State filed notice of its intent to introduce evidence against Gilliam pursuant to Ark. R. Evid. 404(b), specifically evidence of alleged sexual misconduct that had occurred in 2010 between Gilliam and A.M.'s sister, S.M., who was seven years old at the time.

SLIP OPINION

The circuit court held a transfer hearing on 5 August 2015. Prior to the commencement of testimony, defense counsel objected to the use of Gilliam's juvenile court records arising from the 2010 incident, asserting that Ark. Code Ann. § 9-27-309, which governs confidentiality of juvenile records, trumped Ark. Code Ann. § 9-27-318(g)(5), which allows the court to consider the "previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence." Section 9-27-309(k) requires information "regarding the arrest or detention of a juvenile and related proceedings" to be confidential "unless the exchange of information is (1) For the purpose of obtaining services for the juvenile or to ensure public safety; (2) Reasonably necessary to achieve one (1) or both purposes; and (3) Under a written order by the circuit court." Defense counsel asserted that disclosure of the 2010 incident was not sought for the purpose of obtaining services or to ensure public safety; that the plain language of § 9-27-309(k) required any information regarding the arrest or detention of a juvenile to remain confidential; and that § 9-27-309(k), as the more specific statute, should take precedence over the more general § 9-27-318(g). Defense counsel conceded that "information about a juvenile's prior history or arrests that did not come up in juvenile court" would still be allowed under § 9-27-318(g)(5).

In response, the State explained that in investigating the current incident, the investigator learned that there was a previous sexual offense involving the defendant that had been investigated by the sheriff's office. The internal records from the sheriff's office

that pertained to the 2010 investigation were then included in the State's discovery in the present case. The State acknowledged that in 2010 there was a juvenile-court proceeding accusing Gilliam of rape but that the case had been nolle prossed. But the State said that it had no plans to produce any evidence of Gilliam's previous arrest or detention, so § 9-27-309(k) did not apply. The State did intend to introduce testimony pertaining to the 2010 incident, however, to demonstrate Gilliam's previous history of antisocial behavior or patterns of physical violence, which is relevant under § 9-27-318(g)(5). The State reiterated that it was not introducing any report or document that was generated by the 2010 juvenile-court case. The circuit court denied defense counsel's motion.

A.M., now ten years old, testified that she and Gilliam are cousins. She explained that in February 2015, she and Gilliam were alone at their grandmother's house and that something happened between them in the kitchen. She said that Gilliam asked her to "twerk" for him and that she refused. He then began "bumping his private part . . . up against [her] behind." She said that when she later tried to leave the room, "he had grabbed me . . . by my side and pulled my pants down and my panties and started kissing on my behind and starting touching my private and touching my breasts." She said he stopped only when he thought he heard someone coming through the door. She again tried to leave, but Gilliam "grabbed me by my ankle and sat me down in the chair, and he pulled his pants down and his boxers . . . and grabbed my wrist and . . . put my hand on his private part."

Drew Evans, who investigated this incident for the Pulaski County Sheriff's Office, testified that he began his investigation after A.M.'s school counselor reported the incident

to the Arkansas State Police Crimes Against Children Division.  Evans explained that Gilliam was cooperative after his arrest and provided a voluntary statement.  In his statement, Gilliam admitted that he and A.M. were alone at their grandmother's house that day, that A.M. had "rubbed her buttocks around his genital area," but that "they were essentially dancing" and that "was all that occurred."  He denied the remaining allegations.

S.M., now twelve years old, testified that she was aware of the allegations made by her sister, and she agreed that "something with those similar allegations happen[ed] to [her] several years ago."  At this point, defense counsel "renewed [his] earlier objection."  S.M. testified that five years ago, at her grandfather's house, she saw Gilliam and five-year-old A.M. go into the computer room, and when she went into the computer room about five minutes later, they both had their pants down.  She also testified that later that same day, she was in the computer room with Gilliam and that she dropped something behind the couch.  She said, "I bent over to pick it up, and he came behind me and pulled his pants down and pulled my pants down and put his penis in my butthole."

Scott Tanner, the juvenile ombudsman to the Public Defender Commission, testified that there were outpatient sex-offender treatment programs available for juvenile offenders as well as "a finite number of residential beds to deal with sexual offending issues."  Tanner opined that Gilliam could be eligible for this program, administered through the Division of Youth and Families, provided that he and his family meet certain clinical criteria.  Tanner also explained that Gilliam would be ineligible for some programs because he is now eighteen.  He stated that the juvenile division could monitor Gilliam's

SLIP OPINION

supervision and services until he reached twenty-one years of age, but the offense of sexual assault in the second degree did not qualify for extended juvenile jurisdiction.

Kimberly Gilliam, Gilliam's mother, testified that he did not currently live with her because A.M. lived across the street and there was a no-contact order between Gilliam and A.M. Instead, Gilliam lived with a family friend in Rose Bud. She testified that Gilliam was a basketball player and that he hoped to obtain a scholarship and play college basketball. She said that Gilliam was a "typical teenager" and that he attended church regularly. She agreed that he was "pretty mature" for an eighteen-year-old.

Finally, Sharon Hair, Gilliam's maternal grandmother, testified that she had always been a part of his life and that she considered him "sheltered." She also said that he was "respectful" and that she had never had any problems with him.

At the conclusion of the hearing, the court made several findings and denied the motion to transfer. A written order was entered on August 5, and Gilliam timely appealed. This court remanded, however, after holding that the circuit court had failed to make proper written findings as required by § 9-27-318(h)(1). *Gilliam v. State*, 2016 Ark. App. 297. The circuit court entered a new written order in June 2016, and the case is once again before us.

A circuit court's decision to retain jurisdiction of criminal charges against a juvenile must be supported by clear and convincing evidence. Ark. Code Ann. § 9-27–318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *McClure v. State*, 328 Ark. 35, 942 S.W.2d 243 (1997). We will not reverse a circuit court's decision on whether to

transfer a case unless it is clearly erroneous. *Nichols v. State*, 2015 Ark. App. 397, 466 S.W.3d 431. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

In deciding the motion to transfer, the circuit court is to consider the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g). The circuit court is required to make written findings on all of the above factors. Ark. Code Ann. § 9-27-318(h)(1). But there is no requirement that proof be introduced against the juvenile on each factor; and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *D.D.R. v. State*, 2012 Ark. App. 329, 420 S.W.3d 494.

Here, Gilliam argues that the circuit court erroneously found that "§ 9-27-318(g)(5) controlled over § 9-27-309(k)." Gilliam contends that, pursuant to § 9-27-309(k), the court should have deemed inadmissible "information about [Gilliam's] alleged sexual misconduct in 2010 that resulted in a juvenile court proceeding that was dismissed by nolle prosequi." But, because the court did consider evidence about the 2010 incident, it clearly erred in denying the motion to transfer.

Gilliam offers three reasons why the circuit court's decision is mistaken. First, under the plain meaning of § 9-27-309(k), information related to juvenile-court proceedings should be kept confidential. He argues that, in this case, "the witness's testimony describing [Gilliam's] 2010 alleged rape and sexual misconduct provided knowledge to the circuit court judge concerning the juvenile court proceeding that came about as a consequence" of the alleged misconduct.

Second, Gilliam asserts that because the 2010 incident did not result in an adjudication, it could not be used by the prosecutor as a factor in deciding whether to charge him as an adult, according to Ark. Code Ann. § 9-27-309(a)(2). It follows, therefore, that the prosecuting attorney should not be allowed to introduce information pertaining to the 2010 juvenile-court proceeding at the transfer hearing, either.

Third, Gilliam argues that the court erroneously accepted the State's argument that § 9-27-318(g)(5) took precedence over § 9-27-309(k). Gilliam contends that § 9-27-318(g) sets forth categories of facts for the court to consider but that the facts still have to be admissible pursuant to the rules of evidence; and that in juvenile court transfer hearings, "the confidentiality provision of § 9-27-309(k) functions as a rule of evidentiary exclusion."

The State responds that § 9-27-309 is inapplicable to this case because S.M. testified about her own personal experience and not about "the arrest or detention of a juvenile or related proceedings." The State correctly notes that no witness referred to the previous juvenile proceeding; and no documents or other evidence from the previous juvenile proceedings were introduced (In fact, there were no exhibits introduced at the hearing.). Because the statute does not apply, the circuit court did not clearly err in allowing S.M.'s testimony, which was relevant to Gilliam's previous history as set out in § 9-27-318(g)(5). The State also argues that even if the evidence of Gilliam's prior acts was introduced improperly, the circuit court's decision to deny the transfer was still not erroneous considering the totality of the circumstances and all the factors in § 9-27-318(g).

We agree that § 9-27-309(k) does not apply. S.M.'s testimony was not evidence "regarding the arrest or detention of a juvenile and related proceedings"; in fact, there was no reference at all to the prior juvenile proceedings during the State's case. Therefore, we hold that circuit court did not err in admitting S.M.'s testimony and denying the motion to transfer.



Affirmed.

ABRAMSON and KINARD, JJ., agree.

*Llewellyn J. Marczuk*, Deputy Pub. Def., by: *Clint Miller*, Deputy Pub. Def., for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.