SLIP OPINION

Cite as 2016 Ark. App. 502

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–16–86

| | |
|---|---|
| BYREN CLAYTON LEACH<br>APPELLANT<br><br><br>V.<br><br><br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** October 26, 2016<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. CR-2015-726]<br><br>HONORABLE STEPHEN TABOR, JUDGE<br><br>AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Byren Leach, a fifteen-year-old juvenile, was charged as an adult in the Sebastian County Circuit Court with one count of rape. Leach filed a motion to transfer the case to the juvenile division of the circuit court. Following a hearing, the circuit court denied Leach's motion to transfer. Leach timely appealed and now argues that the circuit court's denial of his motion was clearly erroneous. We are unable to conclude that the circuit court's decision was clearly erroneous, and we affirm.

I. *Background*

Prior to the instant charge, Leach had a history in the juvenile courts. In 2013, he was adjudicated delinquent after entering a plea of true to the charge of fourth-degree sexual assault. Leach admitted abusing a five-year-old male cousin. As a result of that adjudication,

he was placed on probation for two years and ordered to complete a residential sex-offense-specific treatment.

Leach entered treatment at the Piney Ridge Center and successfully completed it in September 2014. Following his release from treatment, he was given a "Juvenile Sex Offender Safety Plan" with provisions for supervision of his activities when in the presence of anyone under the age of eighteen. Leach also participated in outpatient treatment from 2014 through approximately May 2015. In June 2015, the juvenile court ordered Leach to submit to a "Registration Risk Assessment." Diana Smith performed that assessment on June 29, 2015.

The day after the assessment was performed, Leach was arrested for breaking into cars with several other individuals.[1] Three days later, on July 3, 2015, Leach allegedly raped his twelve-year-old female cousin. The alleged victim reported to the Fort Smith Police Department that Leach would sometimes spend days at a time at her home and would sleep in her brothers' bedroom. On the night of the assault, she had been asleep but woke up to a sharp pain in her vaginal area; when she looked down, she realized that "his thing was inside of her." The police contacted Leach, who admitted "fingering" and penetrating his cousin while she was asleep. He was arrested and charged as an adult with rape.

---

[1]Leach was adjudicated delinquent on these charges and placed on probation by the Crawford County Circuit Court, juvenile division.

SLIP OPINION

## II.  *Standard of Review*

A prosecuting attorney has the discretion to charge a juvenile, fifteen years of age, in the juvenile or criminal division of the circuit court if the juvenile allegedly engaged in conduct that if committed by an adult would be the offense of rape. Ark. Code Ann. § 9–27–318(c)(2) (Repl. 2015). Here, the prosecutor exercised its discretion to charge Leach as an adult. After being charged in the criminal division of circuit court, Leach filed a motion to transfer his case to the juvenile division of circuit court. In response, the State filed a motion denying that Leach's case should be transferred to the juvenile division but asserting that, if it was transferred, it should be designated as an extended juvenile jurisdiction (EJJ) case.

The court held a hearing on the request pursuant to Arkansas Code Annotated section 9–27–318(e).  Leach, as the moving party, bore the burden of proving that his case should be transferred. *Magana-Galdamez v. State*, 104 Ark. App. 280, 291 S.W.3d 203 (2009). The burden of proof in a juvenile transfer hearing is by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9–27–318(h)(2). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Neal v. State*, 2010 Ark. App. 744, at 6, 379 S.W.3d 634, 637. With the law in mind, we turn to the facts adduced at the juvenile-transfer hearing.

## III.  *Juvenile-Transfer Hearing*

At the juvenile-transfer hearing, Leach called three primary witnesses: Donna Watson, the director of juvenile services for Sebastian County; Dr. Curtis Grundy, a licensed psychologist; and Diana Smith, a psychotherapist at the UAMS Family Treatment Program,

who performed the June 29, 2015 "Registration Risk Assessment" on Leach. Each witness believed that transfer to juvenile court and an EJJ designation were appropriate. Each witness reported that there were services available to Leach within the juvenile division of the circuit court. Watson testified that if Leach was committed to the Division of Youth Services, there were services that would be available to him before his eighteenth birthday, such as psychological evaluations and sex-offender treatment. Dr. Grundy's written evaluation noted that "[t]reatment facilities are available to the court for the purpose of providing sex offender treatment, which is appropriate for [Leach's] treatment needs and the long-term necessity for his ability to manage his future behavior." Smith recommended that Leach "remain[ ] in a secure facility until his recent [rape] charges are adjudicated and disposed. [Leach's] needs would be served best through the juvenile justice system, where rehabilitative services within a secure setting are available." All three witnesses agreed that these rehabilitative services would not be available to Leach in the adult prison system due to his age. Dr. Grundy noted that if Leach was tried and sentenced as an adult on the current charge, he would "not be afforded the sex-offender treatment that he currently needs right now" and that could benefit him—and society—down the road on his release from incarceration.

Each witness believed that Leach's age of fifteen supported transfer to the juvenile division and an EJJ designation. Watson emphasized that Leach was fifteen years old, stating that, at age fifteen, "there's still hope for someone to change, to learn, to become someone different than who they are." Dr. Grundy also testified about Leach's sophistication and maturity, noting that those factors were consistent with a fifteen-year-old adolescent. He

explained that the adolescent brain is "prone to impulsivity and poorly-planned behaviors and brain development" and that brains do not quit developing until an individual is in his or her early twenties. For that reason, Dr. Grundy opined that EJJ would afford Leach the opportunity to be involved in a sex-offender-treatment program that was appropriate to his needs and that could "benefit him and others too, hopefully reducing his risk and teaching him some skills to manage his behavior." Smith maintained that Leach, at the age of fifteen, was not fully developed neurologically, and additional treatment could produce additional benefit. She noted that, in her years of performing risk assessments, she had seen numerous juvenile offenders make remarkable changes in their behavior in their late teenage years.

Each witness also acknowledged, however, that Leach had already been to a treatment facility based on his previous sexual–assault charge and that he had reoffended despite this treatment. Dr. Grundy performed a Juvenile Sex Offender Assessment Protocol (J-SOAP), which resulted in a score that was "associated with present estimation of high risk for sexual offending." That "high risk" was based on Leach's history of multiple sex offenses, the degree of planning and sexual aggressiveness, and a high degree of sexual drive and preoccupation. Smith noted that Leach had reoffended after completing his residential sex-offense-specific treatment. Smith further commented that it appeared that Leach had not been appropriately supervised, despite the safety plan and conditions of his probation.[2] She conceded, however,

---

[2]Among the directives of this plan were that Leach was to be supervised at all times by a responsible adult who was aware of his sexual problem when in the presence of anyone under the age of eighteen; that he was to have no sexual contact, consensual or otherwise, with anyone under the age of eighteen; and that he was not to share sleeping arrangements with anyone under the age of eighteen.

that there was no guarantee that the treatment would be effective and acknowledged on cross-examination that she could not call his prognosis good.

Despite Dr. Grundy's J-SOAP "high risk" assessment and Smith's "not good" prognosis for Leach, both witnesses nonetheless opined that transfer to the juvenile division with an EJJ designation was still appropriate for Leach. Dr. Grundy concluded as follows:

> [Leach's] functioning, level of risk, and treatment needs appear appropriate for transfer to juvenile court with the provision of extended juvenile jurisdiction. Extended juvenile jurisdiction is necessary should his case be transferred, as he will potentially require placement in the adult correctional system following treatment services and rehabilitative interventions. Nevertheless, Byren's future risk can be impacted by his placement and participation in treatment services during adolescence.
>
> Byren's history of sexual offending and treatment history indicate that extended juvenile jurisdiction is necessary for the management of his behavior and protection of the public. Accordingly, this examiner concurs with the previous recommendation by Diana Smith, LCSW, that Byren's needs would be best served through transfer to the juvenile justice system. Byren would benefit from treatment services in a secure setting to address sexual offending and to mitigate his future risk.

At the conclusion of the hearing, the court expressed its difficulties with the case, noting that it "would be an easy case" if Leach were seventeen or if there had been testimony that there was a high likelihood of success with rehabilitation. The court was concerned, however, that the prognosis for reoffending was "so poor." On the other hand, though, the court also had "great concern because I know what happens to fifteen-year-olds in the penitentiary." The court then announced that it would take the matter under advisement.

Shortly thereafter, the court entered an order denying Leach's motion to transfer. After considering each of the ten statutory factors, the court concluded that,

6

SLIP OPINION

despite a great reluctance to leave a person of [Leach's] age to the workings of adult incarceration, the motion must be denied. There are essentially no factors, other than the court's reluctance, which argue for transfer. Defendant's past failure at treatment and the age of those he has victimized, as well as the poor prognosis offered by his own witnesses, speak to the necessity of denying the motion.

Leach timely appealed, and now asserts that the circuit court's decision was clearly erroneous.

IV. *Analysis*

Pursuant to Arkansas Code Annotated section 9-27-318(g), the trial court shall consider each of ten factors in a transfer hearing. The trial court is required to make written findings on all of the factors. Ark. Code Ann. § 9-27-318(h)(1). However, there is no requirement that proof be introduced against the juvenile on each factor, and the trial court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *D.D.R. v. State*, 2012 Ark. App. 329, at 3, 420 S.W.3d 494, 496. We therefore turn to the circuit court's analysis and conclusions regarding the statutory factors.

We first address the factors on which we have no difficulty in concluding that the circuit court was not clearly erroneous. The first factor is the seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court. Ark. Code Ann. § 9-27-318(g)(1). The circuit court found that the charge against Leach, rape, was a Class Y offense, and that it was "particularly serious." We cannot say that the circuit court's decision on this factor was clearly erroneous.

The second factor is whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner. Ark. Code Ann. § 9-27-318(g)(2). Noting that the defendant's witnesses had conceded that the offense was committed in a premeditated and

SLIP OPINION

willful manner, the court concluded that this factor weighed against transferring the case to juvenile court. We agree. Dr. Grundy testified that, based on what he had read in the police investigative report, the assault was not "entirely impulsive in nature" and that it appeared that there "was a pattern of premeditation."

The third factor is whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted. Ark. Code Ann. § 9-27-318(g)(3). The circuit court correctly found that the offense was alleged to have been committed against a minor. As noted above, the victim was a twelve-year-old girl. We therefore agree with the court's conclusion on this factor.

The fourth factor is the culpability of the juvenile, including the level of planning and participation in the alleged offense. Ark. Code Ann. § 9-27-318(g)(4). Dr. Grundy testified that Leach admitted engaging in the charged conduct and acknowledged that his actions were wrong. Based on this evidence, the court appropriately found that Leach had a high degree of culpability in this respect.

The fifth factor is the previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against person or property, and any other previous history of antisocial behavior or patterns of physical violence. Ark. Code Ann. § 9-27-318(g)(5). Here, the court cited evidence of Leach's history in juvenile court, including his adjudications for attempted breaking or entering and fourth-degree sexual assault. This evidence was undisputed, and the circuit court's decision was thus not clearly erroneous.

The eighth factor is whether the juvenile acted alone or was part of a group in the commission of the alleged offense. Ark. Code Ann. § 9-27-318(g)(8). The circuit court found, and the evidence was undisputed, that no one other than Leach was alleged to have been involved in the incident.

The ninth factor requires the circuit court to consider reports and other materials relating to the juvenile's mental, physical, educational, and social history. Ark. Code Ann. § 9-27-318(g)(9). On this issue, the court found that the evidence demonstrated that Leach had failed in his efforts at treatment for inappropriate sexual behavior, and had engaged in disruptive and otherwise poor behavior in school and in treatment. We note that those same reports also indicated that Leach was an appropriate candidate for an EJJ designation. However, we cannot conclude that the court's assessment of this factor was clearly erroneous.

The tenth factor allows the court to consider any other factors deemed relevant by the judge. Ark. Code Ann. § 9-27-318(g)(10). Here, the court considered Leach's age, the effect of time served in an adult facility on a person of his age, the fact that Leach had admitted to numerous sexual assaults, and the fact that Leach had committed at least two very serious sexual assaults against children of both genders.

We turn now to the court's analysis of the sixth and seventh factors, which gives us some pause. The sixth statutory factor is the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult. Ark. Code Ann. § 9-27-318(g)(6). On this factor, the circuit court found that Leach "appears from the testimony to possess the

sophistication and maturity expected from a person of his age." Dr. Grundy did offer testimony that Leach's sophistication and maturity were "consistent with a fifteen-year-old adolescent." We note, however, that Dr. Grundy also qualified that statement with the additional comment that the adolescent brain is "prone to impulsivity and poorly-planned behaviors and brain development."[3] While perhaps not factually clearly erroneous, this evidence seems inconsistent with the court's conclusions that "[t]here are essentially no factors, other than the court's reluctance, which argue for transfer."

The seventh factor requires the court to consider whether there are facilities or programs available to the judge of the juvenile division of the circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday. Ark. Code Ann. § 9-27-318(g)(7). Here, the court heard undisputed evidence that there are facilities or programs available to the judge of the juvenile court. Each of Leach's witnesses opined that Leach was a good candidate for an EJJ designation because Leach could be placed in a sex-offender treatment program that was appropriate to his needs and because Leach would not be afforded the treatment that he needed if he were sentenced as an adult. The court found that "the likelihood of the defendant's rehabilitation in the juvenile system is at best suspect, given the failure of past efforts to rehabilitate him by the juvenile system. In fact, his own expert witnesses characterized his prognosis as 'poor,' especially in light of his re-offense so soon after the previous attempt at treatment."

---

[3] The court made no specific findings regarding the brain development of a fifteen-year-old child's brain. The evidence before the court, however, was undisputed that a person of that age is not fully neurologically developed and is prone to making impulsive decisions.

On appeal, Leach argues that the circuit court should have given more weight and consideration to this factor, asserting that "there is no good reason not to try" for rehabilitation and that "[s]peculating about [his] prognosis in the future, without attempting further intervention, does not make [sense] from a legal, psychological, or economic perspective."

Despite the sympathetic appeal of this argument, our standard of review forces us to reach a different conclusion. Our caselaw provides that the court was not required to assign equal weight to this factor and was entitled to use its discretion in deciding the weight to be afforded each factor. *Kiser v. State*, 2015 Ark. App. 198, at 10, 487 S.W.3d 374, 380. As noted above, the court did acknowledge that there was evidence of the likelihood of rehabilitation, but it was also concerned that such likelihood was poor given past failures at rehabilitation. As this court recently stated, "[t]hat the court did not weigh one factor the way [the appellant] wanted it weighed does not make the court's decision clearly erroneous." *Lindsey v. State*, 2016 Ark. App. 355, at 9, ___ S.W.3d ___, ___; *see also V.S. v. State*, 2015 Ark. App. 433, 468 S.W.3d 311 (affirming denial of transfer to juvenile court where the circuit court found that appellant failed to take advantage of rehabilitative opportunities in the past and would be unlikely to do so if placed in DYS custody).

Based on its consideration of the statutory factors, the court denied Leach's transfer motion. On the whole, we cannot find that this was clearly erroneous. *See Harris v. State*, 2016 Ark. App. 293, 493 S.W.3d 808 (We will not reverse a circuit court's determination of whether to transfer a case unless that decision is clearly erroneous.). Leach began to engage

in a pattern of sexually aggressive behavior at an early age; had been placed on probation; was given a safety plan, with which he failed to comply; had been in residential sex-offender treatment for nearly a year, but still reoffended within months; and was described by his own experts as being at a high risk for reoffending. As in *V.S.*, *supra*, the facts tended to show that, while there were treatment plans that would be available to Leach in the juvenile system, he "did not demonstrate an ability or willingness to take advantage of them such that prosecution as a juvenile would be appropriate." *V.S.*, 2015 Ark. App. 433, at 6, 468 S.W.3d at 315.

Affirmed.

GLADWIN, C.J., and ABRAMSON, J., agree.

*Timothy C. Sharum*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Amanda Jegley*, Ass't Att'y Gen., for appellee.