Cite as 2019 Ark. App. 357

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-18-1028

| | | |
|---|---|---|
| | | **Opinion Delivered** September 4, 2019 |
| A.M. | | |
| | APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46JV-17-35] |
| V. | | |
| | | |
| STATE OF ARKANSAS | | HONORABLE KIRK JOHNSON, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

### BRANDON J. HARRISON, Judge

A.M. appeals the circuit court's order that he be adjudicated pursuant to extended juvenile jurisdiction (EJJ). He argues that several statutory factors weighed heavily in his favor and clearly outweighed the factors supporting an EJJ designation. We affirm the circuit court.

On 3 February 2017, twelve-year-old A.M. was accused of committing capital murder and aggravated robbery. The State's petition explained that A.M. had entered a convenience store, shot the clerk seven times with a pistol, and taken a vapor cigarette pack and headphones. That same day, the State also moved for EJJ designation.

An "extended juvenile jurisdiction offender" is defined as a juvenile designated to be subject to juvenile disposition and an adult sentence imposed by the circuit court. Ark. Code Ann. § 9-27-303(23) (Supp. 2017). The State may request an EJJ designation if the juvenile is under thirteen years of age at the time of the alleged offense and is charged with

capital murder or murder in the first degree. Ark. Code Ann. § 9-27-501(a)(1) (Repl. 2015). The party requesting the EJJ designation has the burden to prove by a preponderance of the evidence that such a designation is warranted. Ark. Code Ann. § 9-27-503(b) (Repl. 2015). The circuit court is required to make written findings, and it must consider the following factors when deciding whether to designate a juvenile as an EJJ offender:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution as an extended juvenile jurisdiction offender;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated delinquent and, if so, whether the offenses were against persons or property and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication and maturity of the juvenile, as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the court that are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the court.

Ark. Code Ann. § 9-27-503(c).

The circuit court convened a hearing on A.M.'s EJJ designation on 30 August 2018. At that hearing, the court received testimony from numerous witnesses, including members of A.M.'s family, his teachers and counselors, employees of the juvenile facility where he had been held since his detention, two psychologists, and a psychiatrist. On October 9, the circuit court issued the following detailed findings:[1]

> Factor No. 1. The charge of Capital murder is the most serious crime codified in the State of Arkansas. In addition, Aggravated Robbery is also a serious crime involving violence classified as a Y felony. The Court has had the unfortunate opportunity to witness the execution of a young lady working in a convenience store by the juvenile in a callous and premeditated manner through a video tape recording of the murder. The facts surrounding the murder and the history of this juvenile indicate a person who is a clear and present danger to others and justifies the prosecution of the juvenile as an extended juvenile jurisdiction offender.
>
> Factor No. 2. The facts of the case show that this was an aggressive, violent and premeditated crime perpetrated on a young lady who was working to support herself at night as a convenience store clerk and [the crime] was actually a cold blooded execution of her as she went about her duties that night. There is not room for doubt that the action[s] of the juvenile were planned and executed in a willful manner.
>
> Factor No. 3. As discussed above, the violent murder of this young lady satisfied this criteria as to whether or not the offense was against a person whereby [an] injury was inflicted.
>
> Factor No. 4. The Court finds that the juvenile was solely responsible for the planning and execution of the plan to murder the young lady clerk.
>
> Factor No. 5. The juvenile had not been adjudicated delinquent prior to this offense. Antisocial behavior of the juvenile was exhibited as early as first or second grade from the testimony of his teachers in the Rogers/Bentonville

---

[1]The circuit court cited the factors in Ark. Code Ann. § 9-27-318(g) instead of the factors in Ark. Code Ann. § 9-27-503(c); however, the factors are virtually identical, and this citation error presents no problem to our review on appeal.

schools. The description of the teachers as to his thoughts and actions were disturbing to the teachers and they were fearful of him to the extent that the principal would search his backpack for weapons frequently as he arrived at school. In consultation with his father, the juvenile was transferred to another school for special services. At that school, the juvenile manipulated his father into believing that he was being bullied and assaulted at the school so the father insisted that he be moved out of that school and into another school.

The juvenile exhibited disturbing behaviors at home and at school. Testimony in the case has shown that the juvenile has exhibited a violent outburst against his grandmother over her taking a video of him and further testimony showed a pattern of verbal abuse at home with family. Instances of disruptive behavior at Fouke school with teachers and children were introduced by a former stepmother.

Factor No. 6. The Court believes that the acts of the juvenile in carrying out his violent crime indicate a level of sophistication that might be considered unusual for a juvenile his age. The meticulous preparation leading up to the actual murder, the hiding of incriminating evidence away from the murder scene and replacing the murder weapon prior to his father getting up to go to work showed a sophistication of a much older person. In fact, this murder may have never been solved had it not been for his earlier reconnaissance of the store before the murder where the officers were able to identify the juvenile with his face uncovered and by the clothing and bandana he wore at the time of the murder. The Court has considered the juvenile's home environment, emotional attitude, pattern of living, mental evaluations and treatment. The Court believes that the juvenile had a desire to be treated as an adult based on his fantasies regarding his being a drug dealer for a cartel and a hit man for the cartel.

Factor No. 7. The Court does not believe that there are facilities or programs available to the Court that are likely to rehabilitate the juvenile prior to the expiration of the Court's juvenile jurisdiction. The Court is convinced that the mental issues with the juvenile cannot be resolved within a time frame allowed by the Court's jurisdiction. The Court is aware of the services which might be provided but based on medical reports the Court is convinced that no services provided would be sufficient to rehabilitate this juvenile if his case remained as a juvenile case.

Factor No. 8. There is no doubt that the juvenile acted alone in this heinous act and no other person had any influence on his actions. The violent premeditated murder was conceived and planned by the juvenile and was carried out with a lack of compassion for the victim.

4

Factor No. 9.  The Court has reviewed medical reports concerning his mental issues and heard testimony regarding his physical, educational and social history.  There is nothing in these reports which would excuse the behavior of the juvenile's acts that night.

Factor No. 10.  The Court has also considered the interests of society and his behavior since he was detained in making the decision as to this motion.

The Court finds that the acts alleged were committed in an aggressive, violent, premeditated and willful manner and that the seriousness of the offense requires that the juvenile be adjudicated pursuant to extended juvenile jurisdiction.  The Court is convinced that the facts establish that it is in the best interests of the juvenile and society that he be adjudicated as [an] extended juvenile offender.  In other words, the Court finds that the factors supporting these findings are #1, #2, #3, #4, #5, #6, #8, and #10.  . . .  There is no doubt in the mind of the Court that the juvenile would re-offend in a violent manner against others should he be released under the auspices of some DYS policy at some future date as a juvenile offender.

A.M. has filed a timely appeal from the court's findings and its order designating him as an EJJ offender.

"For purposes of appeal, a designation order is a final appealable order and shall be subject to an interlocutory appeal."  Ark. Code Ann. § 9-27-503(f).  This court will not reverse the circuit court's order unless it is clearly against the preponderance of the evidence or clearly erroneous.  *See* Ark. Code Ann. § 9-27-503(b); *see also R.W.G. v. State*, 2014 Ark. App. 545, 444 S.W.3d 376 (standard of review for juvenile-transfer case is clearly erroneous).  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed.  *R.W.G.*, *supra*.  There is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors.  *See D.D.R. v. State*, 2012 Ark. App. 329, 420 S.W.3d 494.

On appeal, A.M. argues that factors (5), (6), (7), and (9) weigh heavily in his favor and clearly outweigh the factors supporting an EJJ designation. First, we note that the court agreed that factors (7) and (9) did not support a finding of EJJ designation (as quoted above, the court cited all factors except (7) and (9) in making its decision). So A.M.'s real disagreement is with factors (5) and (6) and, in his words, the "cumulative effect" of factors (5), (6), (7), and (9).

As noted above, factor (5) is the "previous history of the juvenile, including whether the juvenile had been adjudicated delinquent . . . and any other previous history of antisocial behavior or patterns of physical violence." Ark. Code Ann. § 9-27-503(c)(5). A.M. does not state a specific argument based on factor (5), but as the circuit court noted, A.M. had not been adjudicated delinquent prior to this offense. However, the language of the statute also directs the circuit court to consider "any other previous history of antisocial behavior or patterns of physical violence," and the circuit court found, based on the testimony of A.M.'s teachers and his family, that A.M. exhibited antisocial behavior as early as the first or second grade and exhibited violent and disturbing behavior at home and at school, including physical and verbal abuse of classmates and family members. We hold that the circuit court did not err in finding that this factor supported A.M.'s EJJ designation.

Factor (6) directs the circuit court to consider the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult. Ark. Code Ann. § 9-27-503(c)(6). A.M. argues that his home and environment lacked stability and cites the following facts in support: (1) at a young age, he attended at least four different schools

over a span of five years; (2) he went from his father's custody to his mother's custody when he was approximately three years old; (3) he was placed in the custody of his maternal grandmother for a short time in 2011 while child-protective services conducted an investigation, which resulted in his mother being convicted of injury to a child; and (4) he was later returned to his father's custody, where he continued to be moved to different cities and schools.

The court found that A.M.'s sophistication was demonstrated by his preparation leading up to the murder and his attempts at concealing the evidence afterward. The court noted that it had considered A.M.'s home environment, emotional attitude, pattern of living, mental evaluations, and treatment. And the court nevertheless found that A.M. desired "to be treated as an adult based on his fantasies regarding his being a drug dealer for a cartel and a hit man for the cartel." While there was uncontroverted evidence of environmental and custodial instability in A.M.'s young life, we hold that this evidence does not negate the circuit court's finding that A.M. acted in a sophisticated manner in planning and executing this crime and that this factor supports an EJJ designation.

Finally, A.M. spends considerable time discussing factor (7) (whether there are facilities or programs available to the court that are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction) and factor (9) (written reports and other materials relating to the juvenile's mental, physical, educational, and social history). In its findings on factor (7), the court acknowledged the services that may not be available to a juvenile designated EJJ, but the court found that "*no* services provided would be sufficient to rehabilitate this juvenile if his case remained as a juvenile case." (Emphasis added.) The

7

court expressed genuine concern that A.M. would reoffend if released pursuant to DYS policy as a juvenile offender. And as for factor (9), while the evidence did demonstrate a level of emotional immaturity, the court noted that it had reviewed those materials and found nothing that would excuse A.M.'s behavior.

A.M. asks this court to consider the cumulative effect of factors (5), (6), (7), and (9) and to hold that these factors outweigh the factors that support EJJ designation. However, on factors (5) and (6), we have held that the court did not err in finding that those factors supported EJJ designation, and as noted above, the circuit court did not cite factors (7) and (9) as supporting factors for EJJ designation. What A.M. really asks is for this court to reweigh the factors considered by the circuit court. Here, as required, the court considered each factor, made findings on each, and its findings were supported by the evidence. As the supreme court has held many times, appellate courts will not reweigh the evidence presented to the circuit court. *See Clem v. State*, 351 Ark. 112, 90 S.W.3d 428 (2002). We hold that after reviewing the evidence, we are nowhere close to possessing a firm and definite conviction that the circuit court erred in designating A.M. as an EJJ offender. We therefore affirm.

Affirmed.

VIRDEN and KLAPPENBACH, JJ., agree.

*Robert M. "Robby" Golden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Chris R. Warthen*, Ass't Att'y Gen., for appellee.